S. Boze v. The State.

*No. 539. Decided December 10.*

1. **Theft — Voluntary Return of Stolen Property.** — See facts stated which, in the opinion of the court, were sufficient to establish a case of theft, and insufficient to establish a case of voluntary return of stolen property.

2. **Same.**—A person who takes a thing fraudulently does not purge the offense by handing it immediately back to the owner, when detected. Following Harris v. The State, 29 Texas Court of Appeals, 101.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

Appellant was indicted for the theft of a watch of the value $75, and at his trial was convicted, the punishment being assessed at two years imprisonment in the penitentiary.

The facts of the case are sufficiently stated in the opinion of the court.

No briefs in this case have been received by the Reporter.

DAVIDSON, JUDGE.—This is an appeal from a conviction in the court below for the theft of a watch of the value of $75, with punishment assessed at two years in the penitentiary.

Concisely stated, the salient features of the evidence are: That Kaiser, the alleged owner of the watch, was a guest occupying a room in the Hutchins House, in the city of Houston. In his testimony he states that about 6 o'clock a. m. he rang for a porter to bring him the morning papers, and while reading them he dropped off to sleep, and slept soundly until 7:30 or 8 o'clock, and when he woke he saw a man going out of his room—just stepping out of the door. He yelled at him, when he immediately turned with the watch in his hand. "He never got out of my sight. He asked me if the watch was mine, and I told him it was. He said he was coming down the hall, hunting for his room, when he saw a man run out of my room, and the man dropped my watch on the matting in the hall as he met him. I thanked the defendant for returning my watch to me, and then examined my clothing to see if anything else was gone, and found that nothing else had been taken. The defendant remained in my room some minutes, and then left me. I did not know that my watch was gone until he returned it to me. I did not threaten him with prosecution or any personal violence. The watch was in my vest pocket when I went to sleep, and the vest was on a chair between the bed and the door. The watch was in no manner bruised when the defendant returned it to me, but was in good order."

The testimony of the clerk of the hotel was to the effect, that Kaiser and the defendant were both guests at the hotel, but that defendant's -room was on the third floor, immediately over Kaiser's, on the second

floor; that after Kaiser had related to him the circumstances of the theft of his watch, he sought the defendant in his room and elsewhere in the house, and did not see him again that day.   On the next morning, however, when defendant had eaten his breakfast, and had come into the office where witness was, witness charged him with the theft of the watch, and defendant denied any knowledge of or connection with the affair. The clerk then sent for an officer, and had him arrested.   The defendant himself testified, and stated that on the morning of the occurrence, in going upstairs to his room, he mistook the floor on which his room was situated, and in going down the hall he saw a man run out of a room which he supposed to be his, and that when near him the man dropped a watch, and some one in the room yelled at him; that he picked up the watch about two doors from the room that the man ran out of; that when he went to the room, he asked the man in it (who was the witness Kaiser) if the watch was his, and he said it was; and that he then told him of the person running out of the room and dropping the watch in the hall.   " He thanked me for returning his watch, and after a few minutes conversation I left and went out to work."

These are the main facts in the case.   Defendant's counsel requested the court to instruct the jury, that if the defendant had unlawfully taken the watch from Kaiser, as charged in the indictment, but voluntarily returned same to him without threats of violence or prosecution, they would then assess the punishment at a fine in any sum not to exceed $1000. This instruction was refused by the court, and the correctness of the ruling is the only material question presented on this appeal.   Upon all the legitimate phases of the case the charge is not complained of, and presented the law fully and sufficiently.   We are of opinion that the court did not err in declining to charge upon a voluntary return of the property, under the facts.   There was no voluntary return of the property. Grant v. The State, 2 Texas Ct. App., 163; Willson's Crim. Stats., sec. 1287. A person who takes a thing fraudulently does not purge the offense by handing it immediately back to the owner, when detected.   Harris v. The State, 29 Texas Ct. App., 101.   See Willson's Crim. Stats., sec. 1287, for cited authorities.   The question as to whether defendant fraudulently took the watch or not in the first instance was fully and sufficiently submitted to the jury.   It was their province to determine that question from the evidence.   The evidence was to some extent conflicting, as be-between Kaiser and the defendant, but in our opinion strongly preponderated against the defendant.   Under the facts as shown, we do not think that we would be warranted in holding the testimony to be insufficient, or that there was a voluntary return of the property; and having found no reversible error, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.